## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Eric Michael Sorenson,

                  Plaintiff,                Court File No. 20-cv-501 (NEB/LIB)

    v.                                   **ORDER AND**
                             **REPORT AND RECOMMENDATION**

Minnesota Department of Human Services, et al.

                  Defendants.

---

       This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral, [Docket No. 27], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Plaintiff's Motion for Leave to File First Supplemental Verified Complaint and Notice, [Docket No. 41], Defendants' Motion to Dismiss Plaintiff's Amended Complaint, [Docket No. 47], and Plaintiff's Motion for Partial Summary Judgment as to Count I of Amended Complaint and Notice, [Docket No. 55]. On August 17, 2020, the Court established a briefing schedule for Defendants' Motion to Dismiss Plaintiff's Complaint. (Order [Docket No. 53]). On September 24, 2020, the Court took the present motions under advisement on the Parties' written submissions. (Id.).

       For the reasons discussed herein, Plaintiff's Motion for Leave to File First Supplemental Verified Complaint and Notice, [Docket No. 41], is **DENIED**. For the reasons further discussed herein, the Court recommends that: Defendants' Motion to Dismiss Plaintiff's Amended Complaint, [Docket No. 47], be **GRANTED**; and Plaintiff's Motion for Partial Summary Judgment as to Count I of Amended Complaint and Notice, [Docket No. 55], be **DENIED**.

## I.    BACKGROUND AND STATEMENT OF FACTS[1]

Plaintiff Eric Michael Sorenson (Plaintiff") is civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Am. Verified Compl. [Docket No. 31-2] ¶ 10). Plaintiff resides at MSOP's Moose Lake facility. (Id.).

On June 4, 2019, the MSOP's "Client Behavioral Expectations" policy became effective. (Id. ¶¶ 30–31). Pursuant to this policy, MSOP patients are prohibited from calling witnesses at disciplinary hearings. (Id. ¶ 32).

Plaintiff alleges that prior to January 27, 2020, Plaintiff and other MSOP patients agreed to become involved in a proposed lawsuit alleging that they had all been harassed by Defendant Wyatt in various ways. (Id. ¶¶ 27–39; see also, Id. ¶¶ 112–14). On January 27, 2020, Plaintiff drafted a memorandum in furtherance of the proposed lawsuit ("the Memorandum"). (Id. ¶ 40). Plaintiff then printed the Memorandum and distributed it to the other MSOP patients who had agreed to become involved in the proposed lawsuit. (Id. ¶ 48).

The Memorandum was titled "Re: Lawsuit against MSOP Staff for Retaliation and Due Process Concerns," and it requested specific details of instances of alleged harassment by Defendant Wyatt, steps taken to stop the alleged harassment, injuries suffered due to the harassment, remedies sought as compensation for injuries suffered due to the harassment, and other information. (Id. ¶¶ 40–41). The Memorandum also instructed the other MSOP patients to create a paper trail by filing grievances. (Id. at ¶ 41).

---

[1] For the purposes of the present motion to dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court accepts the facts alleged in the complaint as true and construes them in the light most favorable to Plaintiff. See, Carlsen v. Game Stop, Inc., 833 F.3d 903, 908 (2016) (stating that a facial attack on jurisdiction under Rule 12(b)(1) receives Rule 12(b)(6) protection, so a reviewing court must accept as true all facts alleged in the complaint).

On the night of January 27, 2020, Plaintiff gave the Memorandum to MSOP patient "Doe," who informed Plaintiff that he did not want to participate in the proposed lawsuit. (Id. ¶ 49).

On February 2, 2020, Plaintiff observed patient Doe tear up the Memorandum and place it in the janitor's room. (Id. ¶ 51). Shortly thereafter, Defendant Kosloski instructed Defendants Giersdorf-Thompson and Wyatt to search the janitor's room. (Id. ¶ 52). Defendants Giersdorf-Thompson and Wyatt found the Memorandum, taped it back together, and read it. (Id. ¶¶ 54–57). Defendant Kosloski also read the Memorandum. (Id. ¶ 57).

After reading the Memorandum, Defendants Kosloski and Giersdorf-Thompson requested that Plaintiff speak with them in the lower team room. (Id. ¶¶ 58–59). Plaintiff agreed, and Defendants Kosloski and Giersdorf-Thompson asked him about the Memorandum. (Id. ¶¶ 60–69). Plaintiff disapproved with how the meeting was going, so he ended the meeting and returned to his room. (See, Id. ¶¶ 67–70). Later that night, Plaintiff requested the Memorandum be returned to him, but he was informed that the staff member he asked did not know what happened to the Memorandum. (Id. ¶¶ 71–72).

On February 2, 2020, Plaintiff asked Defendants Kosloski, Giersdorf-Thompson, and Wyatt to return the Memorandum, and they informed him that it had been sent to the MSOP's Office of Special Investigations. (Id. ¶¶ 73–75). Defendant Kosloski also gave Plaintiff a disciplinary report (the "Disciplinary Report"). (Id. ¶ 76). Defendant Koslosko "informed Plaintiff that the disciplinary report was for the Memorandum," and she further informed Plaintiff that he "was prohibited from printing off any further memorandums of such a same or similar nature as the memorandum at issue." (Id. ¶¶ 77–78). The Disciplinary Report itself "states that the Plaintiff violated the facility rules of 'Abuse/Harassment', 'boundary Violation', and Unauthorized [']Control, Possession, Transfer, or Use of Property'." (Id. ¶ 90).

On February 3, 2020,[2] Defendant Joshua P. Andersen explained to Plaintiff "that the disciplinary report . . . would be dismissed at a disciplinary hearing but that Plaintiff still needed to attend the hearing." (Id. ¶ 81).

Shortly thereafter, a disciplinary hearing was held, and the Disciplinary Report was dismissed.[3] (Id. ¶ 82). However, Plaintiff alleges that the Disciplinary Report "still remains in Plaintiff's record on his institutional file although it is dismissed per MSOP policy."[4] (Id. ¶ 85).

Based on these allegations, Plaintiff filed his original Complaint with this Court on February 12, 2020. [Docket No. 1]. After Plaintiff was granted permission to proceed in forma pauperis, Defendants waived service of process in the present action. (See, Waivers of Service [Docket No. 19]).

On June 8, 2020, Defendants filed a motion to dismiss Plaintiff's original Complaint. (Defs.' Mot. to Dismiss Plf.'s Compl. [Docket No. 21]).

On July 1, 2020, Plaintiff filed two motions to amend his original Complaint, in which Plaintiff asserted that he was permitted to amend as a matter of right. [Docket Nos. 29, 31]. Each of Plaintiff's motions to amend were exact copies of the same motion, and his memorandums in support of those motions were substantively duplicative. (See, [Docket Nos. 29–32]). However, attached to one of Plaintiff's motions to amend was his proposed "First Supplemental Verified Complaint Under 42 U.S.C. §§ 1983, 1985, and 1986," [Docket No. 29-1], and attached to his other motion to amend was his proposed "Amended Verified Complaint," [Docket No. 31-2].

---

[2] The Court notes that Plaintiff lists this date as "December 3, 2020." (Id. ¶ 80). Nevertheless, because the section is headed as "The incidents of February 1, 2, and 3, 2020," the Court construes this obvious misstatement as being February 3, 2020. (See, Id. at 25).
[3] Without any elaboration, Plaintiff alleges that "another BER for actions connected to the situation explained herein was upheld." (Id. ¶ 82).
[4] Plaintiff also alleges that he complained to various Defendants about the events described in his Amended Verified Complaint, but he received no assistance. (See, Id. ¶¶ 124–31).

On July 7, 2020, this Court issued an Order granting Plaintiff's first motion to amend his Complaint, [Docket No. 29], and denying his second duplicative motion to amend his Complaint as moot. (Order [Docket No. 36]). Noting that Plaintiff could not proceed with two operative pleadings, this Court further Ordered Plaintiff to inform the Court which of the two documents he attached to his motions to amend is his new, operative Amended Complaint: his "First Supplemental Verified Complaint Under 42 U.S.C. §§ 1983, 1985, and 1986," [Docket No. 29-1], or his "Amended Verified Complaint," [Docket No. 31-2]. (See, Id. at 3–4). As Defendants' motion to dismiss, [Docket No. 21], was directed at Plaintiff's original Complaint and Plaintiff's original Complaint would be rendered inoperative by the filing of his Amended Complaint, Defendants' motion to dismiss, [Docket No. 21], was termed. (See, Id. at 4–5).

On July 16, 2020, Plaintiff informed this Court that his Amended Verified Complaint, [Docket No. 31-2], is his operative pleading in this matter. (Letter [Docket No. 45]. In his Amended Verified Complaint, Plaintiff names as Defendants in their official and individual capacities: (1) the Minnesota Department of Human Services ("DHS"); (2) the MSOP; (3) Jodi Harpstead; (4) Nancy A. Johnson; (5) Kevin D. Moser; (6) Jordan W. Goodman; (7) Blake A. Carey; (8) Andrea Maralee Kosloski; (9) Barry D. Giersdorf-Thompson; (10) Elizabeth A. Wyatt; (11) Kristin Heaton Huso; (12) Anita L. Moonen; (13) Joshua P. Anderson; and (14) Jane/John Does. (Am. Verfied Compl. [Docket No. 31-2]).

Plaintiff's Amended Verified Complaint, when liberally construed in his favor, alleges the following claims pursuant to 42 U.S.C. § 1983: (1) denial of procedural due process regarding the MSOP's prohibition on calling witnesses at disciplinary hearings in violation of the Fourteenth Amendment; (2) retaliation for assisting others in the filing of civil complaints as a jailhouse lawyer/writ writer in violation of the First Amendment; (3) denial of access to the courts in

violation of the First Amendment; (4) denial of right to free speech due to censorship by confiscating the Memorandum in violation of the First Amendment; (5) invasion of privacy by reading the Memorandum in violation of the First Amendment; and (6) denial of substantive due process generically asserted as based on the alleged acts and omissions in violation of the Fourteenth Amendment.[5] (Id.). Plaintiff's Amended Verified Complaint also alleges claims pursuant to 42 U.S.C. § 1985 and § 1986, as well as, various state law claims. (Id.). Plaintiff seeks monetary, injunctive, and declaratory relief. (Id. at 50–51).

## II.   PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT AND NOTICE [Docket No. 41]

On July 16, 2020, Plaintiff filed his Motion for Leave to File First Supplemental Complaint and Notice. [Docket No. 41]. Plaintiff seeks leave to file his proposed First Supplemental Verified Complaint pursuant to Federal Rule of Civil Procedure 15(d). (Id.).

Federal Rule of Civil Procedure 15(d) governs requests for leave to file supplemental proceedings, and it provides that:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

"The purpose of Rule 15(d) is to promote, as complete an adjudication as possible, of an existing dispute between the parties, which may have evolved since the action was initiated." Scneeweis v. N.W. Tech. Coll., No. 97-cv-1742 (JRT/RLE), 1998 WL 420564, at *13 (D. Minn. June 1, 1998).

---

[5] The Court notes that Plaintiff's Amended Verified Complaint periodically employs a shotgun-style listing of various constitutional amendments and rights without any explanation or factual embellishment. (See, e.g., Am. Verified Compl. [Docket No. 31-2] ¶¶ 2, 149). To the extent that any of these listings can be construed as purporting to assert additional constitutional claims pursuant to 42 U.S.C. § 1983, the Court finds that these shogun-style, conclusory allegations fail to state a claim upon which relief can be granted. See, e.g., Iqbal, 556 U.S. at 686.

However, a Court should not permit a party to supplement if it will "hinder judicial efficiency [or] prejudice the rights of other parties to the action." Id.

The decision whether to allow a party to supplement a pleading is within the broad discretion of the Court. Id.; see also, Fed. R. Civ. P. 15(d) advisory committee note, 1963 Amendment ("Rule 15(d) is intended to give the court broad discretion in allowing a supplemental pleading."). "Whether to permit the supplemental pleading should be determined 'in the light of the particular circumstances' before the Court." Nelson v. Faithful Fin., LLC, No. 10-3405 (JNE/JJG); 2010 WL 11565942, at *2 (D. Minn. Dec. 17, 2010) (quoting Fed. R. Civ. P. 15(d) advisory committee note, 1963 Amendment). "[T]here is no absolute right to expand" a case by a supplemental pleading. Chicago Reg'l Council of Carpenters v. Village of Schaumburg, 644 F.3d 353, 356 (7th Cir. 2011).

Here, Plaintiff's proposed First Supplemental Verified Complaint purports to supplement his Amended Complaint by including allegations related to: (1) Plaintiff being placed on an "Individual Program Plan" ("IPP") on February 3, 2020; (2) Defendants enacting a "Behavioral Expectations Handbook" on February 7, 2017; (3) disciplinary reports that were issued to Plaintiff on January 18, 2020, January 31, 2020, February 13, 2020; and (4) disciplinary hearings that were held on January 22, 2020, February 6, 2020, and February 19, 2020. (See, First Suppl. Verified Compl. Under 43 U.S.C. §§ 1983, 1985, and 1986 [Docket No. 41-1]). Based on the proposed supplemental allegations, Plaintiff seeks to purportedly supplement his Amended Complaint by adding several additional Defendants,[6] as well as, several additional claims. (Id.).

Supplemental pleadings are distinct from amended pleadings. "An amended pleading is designed to include matters occurring before the filing of the bill but either overlooked or not

---

[6] This Court notes that Plaintiff's proposed supplemental complaint also omits certain Defendants who are named in his Amended Verified Complaint. (See, Id.).

known at the time. A supplemental pleading, however, is designed to cover matters subsequently occurring but pertaining to the original cause." United States v. Vorachek, 563 F.3d 884, 886 (8th Cir. 1977) (quoting Berssenbrigge v. Luce Mfg. Co., 30 F. Supp. 101 (W.D. Mo. 1939)).

All of Plaintiff's proposed supplemental allegations pertain to events that took place prior to Plaintiff's operative Amended Verified Complaint, [Docket No. 31-2], which is dated June 25, 2020.[7] In fact, many of Plaintiff's proposed supplemental allegations pertain to events that took place prior to Plaintiff's original Complaint, [Docket No. 1], which is dated February 3, 2020. (See, Id.).[8]

Plaintiff's Amended Verified Complaint is his operative pleading in this matter. Plaintiff's proposed supplemental complaint does not "supplement" the claims in his Amended Verified Complaint by "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." See, Fed. R. Civ. P. 15(d). Rather, Plaintiff seeks to add allegations that he could have, but chose not to, include in his Amended Verified Complaint at the time it was filed. Accordingly, this Court finds that it would be improper to grant Plaintiff leave to file his proposed supplemental complaint pursuant to Rule 15(d). See, Oparaji v. New York City Dept. of

---

[7] The Court notes that Plaintiff has already expressly notified the Court that he intends his Amended Verified Complaint to be the operative pleading in this case. (Letter [Docket No. 45]).

[8] Moreover, nearly all of proposed supplemental claims and factual allegations are wholly unrelated to those asserted in his Amended Verified Complaint. Plaintiff's proposed allegations bear no relation to the Memorandum or his purported right to act as a jailhouse lawyer/writ writer which are central to the claims in his Amended Verified Complaint. "Leave to supplement should not be granted where the 'transaction, occurrence, or event' is unrelated to the original cause of action." Jarvis v. Allison, 776 Fed. App'x 267, 268 (5th Cir. 2019) (quoting Fed. R. Civ. P. 15(d)); see also, Hughbanks v. Dooley, No. 10-4064-KES, 2010 WL 11681598, at *2 (D.S.D. Dec. 29, 2010) ("Even if the first six claims were not futile, leave to amend could be denied because they are unrelated to the claims in [the plaintiff's] original complaint."). Plaintiff's only proposed supplemental claim that relates to the claims presently asserted in his Amended Complaint alleges that he was denied procedural due process in violation of the Fourteenth Amendment at various disciplinary hearings due to the MSOP's prohibition on calling witnesses at disciplinary hearings. (See, e.g., Id. ¶¶ 182–86). However, Plaintiff provides little factual elaboration and that proposed supplemental claim is largely duplicative of those already asserted in Plaintiff's Amended Verified Complaint. (See, e.g., Id.). As such, this Court finds that Plaintiff's proposed supplemental claim regarding MSOP's prohibition on calling witnesses at disciplinary hearings is futile for the same reasons as the similar claim asserted in his Amended Verified Complaint. See, e.g., Wattleton v. Hodge, No. 18-cv-00793 (ECT/BRT), 2019 WL 2432159, at *4 (D. Minn. June 11, 2019), aff'd, 798 Fed. App'x 964 (8th Cir. 2020) ("These allegations fail to state a claim upon relief to be granted, and are therefore futile, such that leave to supplement will not be granted.").

Educ., 172 Fed. App'x 352, 354–55 (2d Cir. 2006) (noting that "[t]he court also properly denied [the plaintiff's] motion for leave to file supplemental pleadings because [the plaintiff] sought to add claims relating to an event that took place several months before [the plaintiff] had filed his amended complaint."); Schreier v. Drealan Kvilhaug Hoefker & Co. P.A., No. 18-cv-2310-DSD-KMM, 2019 WL 1923111, at *1 (noting that the "proposed supplemental pleading d[id] not concern events that occurred after the filing of the operative complaint").

In addition, this Court notes that Plaintiff's proposed supplemental complaint seeks to assert new claims against new defendants arising out of factual circumstances that predate his operative Amended Verified Complaint and have little-to-no relation to the claims already asserted in his Verified Amended Complaint. Thus, in effect, Plaintiff's proposed supplemental complaint would serve as a second operative pleading in this matter. As already stated in this Court's prior Order, "Plaintiff may not proceed with two operative pleadings." (Order [Docket No. 36], at 3).

Therefore, Plaintiff's Motion for Leave to File First Supplemental Complaint and Notice, [Docket No. 41], is **DENIED**.

## III. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [Docket No. 47]

On August 6, 2020, Defendants filed their motion to dismiss. [Docket No. 47]. Defendants seek an Order of this Court dismissing Plaintiff's Amended Verified Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss Plf.'s Am. Compl. [Docket No. 47]).

Specifically, Defendants argue that DHS is an improper Defendant, MSOP is not a cognizable legal entity subject to suit, Plaintiff's damages claims against the Defendants in their official capacities are barred by the Eleventh Amendment, Plaintiff fails to allege personal

involvement by several Defendants, Plaintiff fails to plausibly allege any constitutional violation, Defendants are entitled to qualified immunity, and Plaintiff fails to state a claim for punitive damages. (Mem. in Supp. [Docket No. 49], at 7–25). Defendants further argue that Plaintiff's state law claims should be dismissed for various reasons. (Id. at 25–30).[9]

### A.  Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a pleading for lack of subject matter jurisdiction, challenging the sufficiency of the pleading on its face or the factual truthfulness of its allegations. See, Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914–15 (8th Cir. 2015). When, as here, the moving party raises facial challenges, "'the court merely [needs] to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction.' Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" See, Id. at 914 (quoting Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990), and Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).

To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of facts, which, if proven true, would entitle the plaintiff to legal redress against the named defendants under an established legal theory. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir.

---

[9] Plaintiff argues that Defendants' motion to dismiss is not properly before this Court because it is untimely and because Defendants did not meet and confer with Plaintiff until the day after the Complaint was filed. (Mem. in Opp'n [Docket No. 62], at 8–12). Regarding timeliness, this Court finds that Defendants' motion is timely because Defendants filed their response within 21 days of Plaintiff's letter designating his operative pleading appearing on CM/ECF. Regarding Defendants' efforts to meet and confer with Plaintiff, a party is not required to meet and confer before filing a Rule 56 motion for summary judgment, and the present dispositive motion is analogous to a motion for summary judgment. See, L.R. 7.1(a). Moreover, it is within the Court's discretion to consider a motion that does not comply with Local Rule 7.1's meet-and-confer requirement. See, e.g., Daywitt v. Minn. Dep't of Human Servs., No. 17-cv-5574 (NEB/TNL), 2019 WL 1417451, at *3 (D. Minn. Mar. 29, 2019). Here, Defendants met and conferred with Plaintiff by telephone the day after their motion to dismiss was filed. (Meet-and-Confer Statement [Docket No. 66]). In addition, Plaintiff has not indicated that he would have voluntarily dismissed the claims against Defendants, hence any further efforts to meet and confer would have been meaningless. Accordingly, the Court chooses to exercise its discretion and to consider Defendants' motion to dismiss.

1980). In short, "the complaint must allege facts, which if true, state a claim as a matter of law." Id. When deciding a Rule 12(b)(6) motion to dismiss, a court generally may not consider materials outside the pleadings and assumes all facts alleged in the complaint are true, construing all reasonable inferences from those facts in the light most favorable to the complainant. Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008); Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81. Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standard than formal pleadings drafted by lawyers." Erikcon v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted). Nonetheless, "[a]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984);

see also, Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted); see also, Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

### B.  Plaintiff's Federal Claims

As noted above, Plaintiff's asserts federal claims pursuant to 42 U.S.C. § 1983, §1985, and § 1986, and Plaintiff names as Defendants in their official and individual capacities: (1) the Minnesota Department of Human Services ("DHS"); (2) the MSOP; (3) Jodi Harpstead; (4) Nancy A. Johnson; (5) Kevin D. Moser; (6) Jordan W. Goodman; (7) Blake A. Carey; (8) Andrea Maralee Kosloski; (9) Barry D. Giersdorf-Thompson; (10) Elizabeth A. Wyatt; (11) Kristin Heaton Huso; (12) Anita L. Moonen; (13) Joshua P. Anderson; and (14) Jane/John Does. (Am. Verfied Compl. [Docket No. 31-2]).

### i.  Subject Matter Jurisdiction

As a threshold jurisdictional question, the Eleventh Amendment prohibits an action against a state unless it has unequivocally consented to suit or Congress has abrogated the states' immunity for a particular federal cause of action. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72–73 (2000); see, Hadley v. N. Ark. Cmty. Tech. Coll., 76 F.3d 1437, 1438 (8th Cir. 1996); Faibish v. Univ. of Minn., 304 F.3d 797, 800 (8th Cir. 2002). States are entitled to Eleventh Amendment immunity from federal claims brought under Section 1983. Hadley, 76 F.3d at 1438 ("Section 1983 does not

override Eleventh Amendment immunity."). When a lawsuit is barred by the Eleventh Amendment, the case or claim asserted against the state must be dismissed for lack of subject matter jurisdiction. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 64–65 (1996). The immunity afforded a state in federal court extends to agencies of the state. Minn. Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147, 101 S. Ct. 1032, 67 L.Ed.2d 132 (1982)).

"DHS is an agency of the State, and MSOP is operated and maintained by DHS." Gardner v. Minnesota, No. 16-cv-3999-JNE-KMM, 2019 WL 1084714, at *3 (D. Minn. Jan. 15, 2019), report and recommendation adopted by 2019 WL 1086338 (D. Minn. Mar. 7, 2019). Therefore, the Court must necessarily construe Plaintiff's alleged federal claims against DHS and MSOP as being alleged against the State of Minnesota.

Even liberally construing Plaintiff's Complaint and drawing all reasonable inferences in his favor, on the present record before the Court, Plaintiff has failed to assert any factual allegation or identify any legal authority demonstrating that the State of Minnesota waived immunity from suit or demonstrating that Congress abrogating said immunity. Accordingly, the Court finds that DHS and MSOP are immune from the present suit.[10] See, e.g., Id. at *4 (finding DHS and MSOP were immune from suit under the Eleventh Amendment); Geiger v. Minn. Dep't of Human Servs., No. 13-cv-2140 (JRT/LIB), 2013 WL 5596599, at *3 (D. Minn. Oct. 11, 2013) (same).

Similarly, a suit against a state employee in that person's official capacity constitutes a suit against the public employer, namely, the state itself. Johnson v. Outboard Marine Corp., 172 F.3d

---

[10] Plaintiff argues that that DHS is not immune to this suit because Plaintiff seeks injunctive relief hence the Ex parte Young exception to Eleventh Amendment Immunity applies to his claims. (Mem. in Opp'n [Docket No. 62], at 17–18). "This exception permits 'federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law.' But neither DHS nor MSOP are state officials to whom the Ex parte Young exception would apply." Gardner, 2019 WL 1086338, at *4 n.2 (citation omitted) (quoting Carlson v. Richie, 960 F. Supp. 2d 943, 950 (D. Minn. 2013)).

531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)); see also, Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1119–20 (D. Minn. 2008) (citing Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004)). "The law is clear that, 'the real party in interest in an official capacity suit is the governmental entity and not the named official.'" Semler v. Ludeman, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *6 (D. Minn. Jan 8, 2010) (citing Baker, 501 F.3d at 925). "It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precluded an award of money damages against a state official acting in his or her official capacity. A plaintiff may maintain an action against a governmental official if the complaint seeks only injunctive or prospective relief." Semler, 2010 WL 145275, at *7 (citations omitted).

Here, Plaintiff's Amended Verified Complaint asserts claims against the individual Defendants in their official and individual capacities. (See, Am. Verified Compl. [Docket No. 31-2]). As employees of DHS or MSOP, the individual Defendants are state officials. See, Semler, 2010 WL 145275, at *7; Daniels v. Jesson, No. 13-cv-736, (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 22, 2014). Therefore, the Court necessarily construes Plaintiff's alleged official capacity claims against the individual Defendants as being alleged against the employing entity, the State of Minnesota. Because Plaintiff has not demonstrated that the State of Minnesota waived immunity from suit nor that Congress abrogated said immunity, Plaintiff will not be able to recover any monetary relief (whether compensatory or punitive in nature) from the individual Defendants based on any of the claims alleged against them in their official capacities.[11] See, Semler, 2010

---

[11] Indeed, Plaintiff concedes this in his motion papers, and he asserts that he only seeks damages against the individual Defendants in their individual capacities. (Mem. in Opp'n [Docket No. 62], at 19). However, as plead, Plaintiff's Amended Verified Complaint generally asserts claims against Defendants in both their individual and official capacities, and it makes no distinction regarding which damages are sought against Defendants in each capacity. (See, Am. Verified Compl. [Docket No. 31-2]).

WL 145275, at *7 ("[T]o the extent that Plaintiffs seeks monetary damages for actions taken by Defendants in their official capacities, these claims against Defendants are barred by the Eleventh Amendment[.]").

Therefore, this Court recommends that all Plaintiff's claims to the extent that they are asserted against DHS or MSOP be **DISMISSED with prejudice** for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). This Court further recommends all of Plaintiff's official-capacity claims against the individually named Defendants which seek to recover monetary damages be **DISSMISSED with prejudice** for lack of subject matter jurisdiction.

### ii.    42 U.S.C. § 1983 Claims

Plaintiff brings several claims under 42 U.S.C. § 1983. (See, Am. Verified Compl. [Docket No. 31-2]). To state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege a] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."). In addition to pleading individual involvement, a plaintiff must sufficiently plead a violation of a specific constitutional right. Id.

### 1. Personal Involvement

Defendants argue that Defendants Harpstead, Johnston, Moser, Goodman, Carey, Huso, and Moonen should be dismissed because Plaintiff has not alleged sufficient facts demonstrating that these Defendants were personally involved in the alleged constitutional violations. (Mem. in Supp. [Docket no. 49], at 9–10). Although Defendant Joshua P. Anderson is not part of the present motion to dismiss, the Court will consider his personal involvement as well.

As previously noted, "[t]o state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014) (citing Iqbal, 556 U.S. at 676)). Thus, to survive Defendants' current Motion to Dismiss, Plaintiff in the present case must have alleged sufficient facts to show each individually named Defendant's personal involvement in the asserted violations with "more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." See, Twombly, 550 U.S. at 555.

In reference to Defendants Harpstead, Johnston, and Moser, Plaintiff genericaly alleges that they each "creates, applies, and interprets policies, practices, etc. which have contributed in the specific acts or omissions of this complaint as unconstitutional," and "[u]pon information and belief, [each of these Defendants] has been and continues to be directly and personally involved in the violations of Plaintiff's statutory and constitutional rights alleged herein." (Am. Verified Compl. [Docket No. 31-2] ¶¶ 13–15, see also, Id. ¶¶ 121–23). However, Plaintiff also alleges that Defendants Harpstead, Johnston, and Moser "implemented, updated and utilized" the MSOP's "Client Behavioral Expectations" policy that prohibits MSOP patients from calling witnesses at disciplinary hearings, which is at issue in Plaintiff's procedural due process claim. (Id. ¶¶ 30). In addition, Plaintiff alleges that under Minnesota law, Defendant Harpstead is required to establish

16

and maintain the MSOP and to adopt rules to govern its operations, and Plaintiff attached the MSOP's Client Behavioral Expectations" policy, which is signed by Defendant Johnston, to his original Complaint. (Id. ¶¶ 119–20; Ex. 1 [Docket No. 1-1], at 15).

Regarding all Plaintiff's claims except his procedural due process claim, Plaintiff's generalized, conclusory statements fail to raise Plaintiff's claims of Defendants Harpstead, Johnston, and Moser's personal involvement above the speculative level. Court have consistently found such generalized, conclusory assertions to fall well short of the type of specific factual allegation needed to raise a plaintiff's claim of personal involvement by a defendant above the speculative level. See, Boots v. Johnson, 17-cv-3923 (DWF/LIB), 2018 WL 4443166, at *6 (D. Minn. Jan. 23, 2018), report and recommendation adopted, 2018 WL 3659018 (D. Minn. Aug. 2, 2018); see also, Miles v. Hartlieb, No. 19-cv-1567 (JNE/KMM), 2020 WL 2527103, at *5 (D. Minn. Apr. 6, 2020), report and recommendation adopted by 2020 WL 2526200 (D. Minn. May 18, 2020) ("A plaintiff must allege something beyond an individual's general responsibility for supervising operations at an institution or authority to implement policies in order to create liability for that defendant."). Plaintiff fails to state facts as to how Defendants Harpstead, Johnston, and Moser were personally involved in or directly participated in any of the alleged constitutional violations other than his procedural due process claim. (See, Am. Verified Compl. [Docket No. 31-2]).

Liberally construing Plaintiff's Complaint in his favor, his Complaint can only be reasonably construed as alleging that Defendant Harpstead, through her role as the "Commissioner of DHS," Defendant Johnston, through her role as "Chief Executive Officer" of MSOP, and Defendant Moser, through his role as the "MSOP Facility Director," took part in these alleged

violations of Plaintiff's constitutional rights solely due to their holding of supervisory positions. (See, Am. Verified Compl. [Docket No. 31-2]).

It is well settled, however, that a state official cannot be vicariously liable under Section 1983 for the acts of her subordinates under the doctrine of respondent superior, unless the state official was personally involved in, or participated in, the alleged unconstitutional acts. See, Rizzo v. Goode, 423 U.S. 362, 371 (1976); Clemmons v, 477 F.3d at 967; Boots, 2018 WL 4443166, at *6.

Regarding Plaintiff's procedural due process claim, Plaintiff has plausibly pleaded that Defendants Harpstead, Johnston, and Moser were directly involved in the implementation of the MSOP's policy that prohibits MSOP patients from calling witnesses at disciplinary hearings. As said policy is central to Plaintiff's procedural due process claim, Plaintiff's allegations are sufficient to plausibly allege Defendants Harpstead, Johnston, and Moser's personal involvement. See, e.g., Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014) (quoting Bonner v. Outlaw, 552 F.3d 673, 679 (8th Cir. 2009)) ("Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in 'creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions.'").

Therefore, in regard to Defendants Harpstead, Johnston, and Moser, Plaintiff has failed to plausibly state a claim upon which relief may be granted in regards to any of Plaintiff's claims except his procedural due process claim. See, Jackson, 747 F.3d at 543; Clemmons, 477 F.3d at 967.

In reference to Defendants Goodman, Carey, Huso, Moonen, and Anderson, Plaintiff generally alleges that each "enforce[] the policies, practices, and procedures of the MSOP," and "[i]n doing so, upon information and belief, [Defendants Goodman, Carey, Huso, Moonen, and

Anderson] . . . ha[ve] been directly and personally involved in the violations of Plaintiff's statutory and constitutional rights alleged herein." (Am. Verified Compl. [Docket No. 31-2] ¶¶ 16–17, 21–23). Plaintiff also alleges that: Defendant Anderson met with Plaintiff and told Plaintiff that the Disciplinary Report "would be dismissed at the disciplinary hearing but that Plaintiff still needed to attend the hearing;" Defendants Goodman and Carey have developed a pattern of utilizing an unconstitutional disciplinary policy; Plaintiff sent a client request to Defendant Goodman, but Defendant Goodman denied his request; Plaintiff sent a formal grievance to Defendant Huso, but Defendant Huso returned the grievance to Plaintiff without taking action; and "Defendants Huso, Carey, and Goodman all had knowledge of the specific acts and omissions complained about herein and each failed to remedy them." (Id. ¶¶ 80–81, 125–31).

However, these generic, conclusory allegations fail to demonstrate any personal involvement or direct participation by Defendants Goodman, Carey, Huso, Moonen, and Anderson in the constitutional violations alleged in Plaintiff's Amended Verified Complaint. Although Plaintiff generically asserts that Defendants Huso, Carey, and Goodman had knowledge of the acts and omissions alleged in Plaintiff's Amended Verified Complaint, Plaintiff does not plead in any way how that mere knowledge alone is causally connected to any alleged constitutional violation. (See, e.g., Id. ¶ 131). Plaintiff does not allege any specific facts that Defendants Goodman, Carey, Huso, Moonen, or Anderson were personally involved in or directly participated in any of the actions on which Plaintiff bases his claims.

Therefore, in regard to Defendants Goodman, Carey, Huso, Moonen, and Anderson, Plaintiff has failed to plausible plead or state a claim upon which relief may be granted. See, Clemmons v., 477 F.3d at 967; Martin, 780 F.2d at 1337.

19

Accordingly, the Court recommends that all of Plaintiff's claims, except his procedural due process claim, against Defendants Harpstead, Johnston, and Moser be **DISMISSED without prejudice** pursuant to Rule 12(b)(6). The Court further recommends that all Plaintiff's claims against Goodman, Carey, Huso, Moonen, and Anderson be **DISMISSED without prejudice** pursuant to Rule 12(b)(6).

### 2.   Procedural Due Process

Plaintiff alleges that on June 4, 2019, the MSOP's "Client Behavioral Expectations" policy became effective. (Id. ¶¶ 30–31). Pursuant to this policy, MSOP patients are prohibited from calling witnesses at disciplinary hearings. (Id. ¶ 32). After Plaintiff received the Disciplinary Report related to the Memorandum, he attended a disciplinary hearing at which the Disciplinary Report was dismissed. (Id. ¶ 82). Plaintiff asserts that the MSOP's policy prohibiting the calling of witnesses at disciplinary hearings is unconstitutional on its face, and Plaintiff further asserts that he was denied procedural due process at the aforementioned disciplinary hearing because he was not allowed to call witnesses pursuant to the policy. (See, e.g., Id.).

The Court reviews a Fourteenth Amendment procedural due process claim in two steps. Senty–Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). First, the Court determines whether the plaintiff has alleged deprivation of a protected liberty or property interest. Id. Protected liberty interests are found in the Due Process Clause itself, and they may also be created by the laws of the states. Id. If the plaintiff has a protected liberty or property interest, the Court determines "what process is due by balancing the specific interest that was affected . . . the likelihood that the [applicable procedures] would result in an erroneous deprivation, . . . [and the affected program's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." Id. (citing Mathews v. Eldridge, 424 U.S. 319, 332–35, 96 S. Ct.

893, 47 L.Ed.2d 18 (1976)). "The most important mechanisms for ensuring that due process has been provided are notice of the factual basis leading to a deprivation and a fair opportunity for rebuttal." <u>Id.</u> at 888.

"Neither the Supreme Court nor [the Eighth Circuit] has determined the extent to which the Constitution affords liberty interests to indefinitely committed dangerous persons under the <u>Matthews</u> balancing test." <u>Senty–Haugen v. Goodno</u>, 462 F.3d 876, 886 (8th Cir. 2006). Since Plaintiff has been civilly committed to state custody, his liberty interests are considerably less than those held by members of free society. <u>Id.</u> However, compared to a prison inmate, Plaintiff is entitled to "more considerate treatment and conditions of confinement." <u>Id.</u> (quoting <u>Youngblood v. Romeo</u>, 457 U.S. 307, 322, 102 S. Ct. 2452, 73 L.Ed.2d 28 (1982)). Nevertheless, reference to cases involving due process claims in the prison context will provide guidance in analyzing the due process claims of a civilly committed individual. In the prison context, for example, a change in the condition of confinement implicates a liberty interest only when the action creates deprivations which "work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." <u>Moorman v. Thalacker</u>, 83 F.3d 970, 972 (8th Cir. 1996).

Plaintiff does not allege any specific deprivation of a protected liberty or property interest. Rather, he generally alleges that he has a constitutional right to call witnesses at a disciplinary hearing, and therefore, he was denied due process.[12] (<u>See</u>, Am. Verified Compl. [Docket No. 31-2] ¶¶ 30–36, 135–43).

---

[12] Accordingly, Plaintiff alleges that MSOP Policy No. 420-510 is unconstitutional because it prohibits the calling of witnesses at disciplinary hearings. (<u>See</u>, <u>Id.</u>). Another Court in this District recently considered this exact issue as it relates to this exact policy, MSOP Policy No. 420-510. <u>See</u>, <u>Linehan v. Johnston</u>, No. 0:18-cv-3483-WMW-KMM, 2019 WL 6879366, at *5 (D. Minn. Nov. 26, 2019), report and recommendation adopted by 2019 WL 6873984 (D. Minn. Dec. 17, 2019). In <u>Linehan</u>, the Court found that although the plaintiff was not permitted to call witnesses at a disciplinary hearing, he received notice and the opportunity to be heard, and the court concluded that he was not entitled to call witnesses "because the balancing of interests required by <u>Matthews</u> weighs against finding heightened

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake." Schmidt v. Des Moines Pub. Schs., 655 F.3d 811, 817–18 (8th Cir. 2011). We need reach the question of what process is due only if the Plaintiff establishes a constitutionally protected liberty interest; where no liberty or property interest is identified, a procedural due process claim necessarily fails. See, Bealieu v. Ludeman, 690 F.3d 1017, 1047 (8th Cir. 2012) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)).

Accordingly, this Court finds that Plaintiff's procedural due process claim should be dismissed because Plaintiff has failed to allege any facts from which it could be inferred that he has been deprived of a constitutionally protected liberty interest. Although Plaintiff asserts that the prohibition on calling witnesses "is likely to have very serious defects upon the Plaintiff's liberty," Plaintiff asserts no factual allegations that plausibly support his conclusory assertion. (Am. Verified Compl. [Docket No. 31-2] ¶ 83–84). To the contrary, Plaintiff alleges that the disciplinary hearing was resolved in his favor and the Disciplinary Report was dismissed. (Id. ¶ 82).

Because Plaintiff has failed to allege any facts that demonstrate he suffered any deprivation whatsoever as a result of the at-issue disciplinary hearing, Plaintiff has failed to state a procedural due process claim upon which relief can be granted.[13] See, Beaulieu, 690 F.3d at 1047; Schmidt, 655 F.3d at 817–18; see also, Linehan, 2019 WL 6879366, at *4 (finding no constitutionally protected liberty interest was implicated by MSOP disciplinary actions); Sorenson v. Minn. Dept. of Human Servs., No. 14-4193 (ADM/LIB), 2015 WL 251720, at *16 (D. Minn. Jan. 20, 2015) (same).

---

procedural protections were constitutionally required." Id. Based on the allegations asserted in Plaintiff's Amended Verified Complaint, this Court reaches the same conclusion.

[13] This Court notes that Plaintiff does allege that the Disciplinary Report remains in his institutional file despite being dismissed and that the dismissed Disciplinary Report may have some eventual impact on his release. (Id. ¶¶ 85–95). However, "[e]ven if the Discipline Reports are in some way relevant to a determination of his discharge from MSOP, his potential-discharge allegations are too attenuated and speculative to give rise to a constitutionally protected liberty interest." See, e.g., Linehan, 2019 WL 6879366, at *4.

Therefore, this Court recommends that Plaintiff's procedural due process claim be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### 3. Retaliation

Plaintiff asserts that Defendants retaliated against him in violation of the First Amendment. (See, e.g., Am. Verified Compl. [Docket No. 31-2] ¶¶ 144–47). Specifically, Plaintiff asserts that Defendants filed the Disciplinary Report against him in retaliation for his acting as a jailhouse lawyer/writ writer and assisting other MSOP patients in filing civil complaints. (See, e.g., Id.).

To state a claim for retaliation in violation of the First Amendment, "a plaintiff must show: (1) he engaged in a protected activity; (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the protected activity." Evenstad v. Herberg, 994 F. Supp. 2d 995, 1000 (D. Minn. 2014) (citing Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "Failure to satisfy any of the three elements results in the failure of the claim." Evenstad, 994 F. Supp. 2d at 1000 (citing Higdon v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004)); see also, Beaulieu, 690 F.3d at 1025. "[C]ivilly committed persons retain their First Amendment rights to exercise the freedom of speech and to seek redress of grievances[.]" Evenstad, 994 F. Supp. 2d at 1001.

Here, Plaintiff fails to allege sufficient facts in his Amended Verified Complaint to support any retaliation claim. Namely, Plaintiff fails to plausibly articulate any protected activity in which he was engaged. Plaintiff's claim that his activities as a "jailhouse lawyer/writ writer" are constitutionally protected by the mere fact that he is a "jailhouse lawyer/writ writer" communicating about legal matters is contrary to the law. The United States Supreme Court has

specifically held that <u>Turner</u> does not permit "an increase in constitutional protection whenever a prisoner's communication includes legal advice" because "the <u>Turner</u> test, by its terms, simply does not accommodate valuations of content." <u>Shaw v. Murphy</u>, 532 U.S. 223, 230 (2001). Plaintiff's speech is not deemed protected simply because it may contain legal advice or because he is attempting to assist others in legal matters. <u>See</u>, <u>Id.</u> As such, Plaintiff has failed to plausibly allege that his distribution of the memorandum was a constitutionally protected activity.

Because Plaintiff has not alleged any other purportedly protected activity in which he was engaged, Plaintiff has failed to state a retaliation claim upon which relief can be granted.

Therefore, this Court recommends that Plaintiff's First Amendment retaliation claim be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### 4.   Access to the Courts

Plaintiff asserts that Defendants denied him access to the courts in violation of the First Amendment by not allowing him to exercise his purported rights as a jailhouse lawyer/writ writer.[14] (<u>See, e.g.</u>, Am. Verified Compl. [Docket No. 31-2] ¶¶ 148–50). Specifically, Plaintiff alleges that Defendants prohibited him from "printing off any further Memorandums of such a same or similar nature as the Memorandum at issue." (<u>Id.</u> ¶¶ 78, 108). Plaintiff further alleges that as a result, he was unable to assist other MSOP patients in bringing the proposed lawsuit through which he planned on asserting their claims, as well as, his own. (<u>See, e.g.</u>, <u>Id.</u> ¶¶ 108–10).

Under the First Amendment, the freedom to petition includes the right of access to the courts. See, <u>BE & K Const. Co. v. N.L.R.B.</u>, 536 U.S. 516, 524–25 (2002); <u>Bill Johnson's Rests.</u>,

---

[14] Plaintiff's access to the Courts claim is based on the assertion that <u>his</u> constitutional right to access the courts has been violated by Defendants, and he does <u>not</u> purport to bring this claim on behalf of others MSOP patients who have allegedly been denied access to the courts. (<u>See, e.g.</u>, <u>Id.</u> ¶¶ 2(d), 149–150).

Inc. v. N.L.R.B., 461 U.S. 731, 741 (1983). The due process clause of the Fourteenth Amendment makes the First Amendment applicable to the states. Republican Party of Minn. v. White, 416 F.3d 738, 748 (8th Cir. 2005).

Federal Courts may assert jurisdiction only over cases and controversies, and a core element of Article III's case-or-controversy requirement is that a plaintiff have standing to sue. See, Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To establish standing to bring an access to the courts claim, a plaintiff must allege the he suffered an actual injury caused by the alleged limited access, such as the inability to file a complaint or the dismissal of a claim. See, White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) (providing that to prove actual injury a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded"). Plaintiff must show that the alleged deprivations actually hindered his efforts to pursue a legal claim. Beaulieu v. Ludeman, No. 7-cv-1535 (JMR/JSM), 2008 WL 2498241, at *18 (D. Minn. June 18, 2008). This showing of prejudice is required of pretrial detainees, as well as, prisoners. See, Thomsen v. Ross, 368 F. Supp. 2d 961, 974 (D. Minn. 2005). "[I]f a plaintiff lacks standing, [a] district court has no subject matter jurisdiction. Therefore, a standing argument implicates Rule 12(b)(1)." Beaulieu, 2008 WL 2498241, at *5 (alterations in original) (quoting Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002)).

Plaintiff has not asserted any factual allegations demonstrating that Defendants' actions resulted in actual harm or injury to Plaintiff himself, such as the loss or rejection of a nonfrivolous legal claim. See, Beaulieu, 2008 WL 2498241, at *18. While Plaintiff alleges that he was prevented from bringing the proposed lawsuit because he could not assist other MSOP patients in asserting their claims, Plaintiff's Amended Verified Complaint does not contain any factual allegations that plausibly indicate Plaintiff was prevented from raising any legal claim of his own. (See, Am.

Verified Compl. [Docket No. 31-2]). Although Plaintiff asserts that he was prevented from asserting the proposed lawsuit insofar as it was intended to include other MSOP patient's claims in addition to his own, Plaintiff does not allege that his ability to bring his own claims independently was impeded in any way. (See, Id.). Rather, Plaintiff merely alleges that Defendants prevented him from asserting the claims of other MSOP patients.[15] (See, Id.).

"A jailhouse lawyer has no independent right to provide legal advice, but may assert the right on behalf of other inmates who are otherwise unable to obtain access to the courts." Semler v. Piper, No. 16-cv-399 (JNE/LIB), 2017 WL 1082286, at *1 (D. Minn. Mar. 22, 2017) (quoting Goff v. Nix, 113 F.3d 887, 890 (8th Cir. 1997)). Moreover, courts have continually held that a non-lawyer may not represent other individuals or entities in federal court. See, e.g., Hentges v. Vandelist, No. 15-cv-1203 (DWF/TNL), 2015 WL 2454120, at *3 (D. Minn. May 22, 2015) (collecting cases); Steele v. City of Bemidji, 257 F.3d 902, 905 (8th Cir. 2001) (holding that a non-lawyer plaintiff may not represent other individuals in federal court). A "pro se litigant[ ] can never represent the rights, claims and interest of other parties in a class action lawsuit (or otherwise)." Perkins v. Holder, No. 13-cv-2874 (PAM/FLN), 2014 WL 755378, at *5 n.8 (D. Minn. Feb 26, 2014) (citing Fymbo v. State Farm Fire and Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000)); see also, Hentges, 2015 WL 2454120, at *3; Knoefler v. United Bank of Bismark, 20 F.3d 347, 348 (8th Cir. 1994).

Plaintiff has no right to act as a jailhouse lawyer/writ writer, and he is affirmatively prevented from representing others in federal court. Plaintiff does not allege that he was prevented from asserting any of his own claims. Accordingly, Plaintiff has failed to demonstrate that

---

[15] Plaintiff only generally refers to other MSOP patients and their claims. He does not specifically identify a single other MSOP patient who agreed to be part of the proposed lawsuit that was the subject of the Memorandum. (See, Am. Verified Compl. [Docket No. 31-2]).

Defendants' actions resulted in any actual harm or injury to Plaintiff's own right to access the courts, hence Plaintiff lacks standing to bring his purported access to the courts claim.[16] See, e.g., Semler, 2017 WL 1082286, at *1 (concluding that the plaintiff "d[id] not have standing to assert the First Amendment claims relating to his 'jailhouse lawyering' . . . because he [did] not allege[] any injury to himself").

Therefore, this Court recommends that Plaintiff's First Amendment access to the courts claim be **DISMISSED without prejudice** for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### 5. Right to Free Speech

Plaintiff asserts that Defendants censored his free speech in violation of the First Amendment by confiscating the Memorandum and prohibiting him from distributing further memorandums. (See, e.g., Am. Verified Compl. [Docket No. 31-2] ¶¶ 2(e), 151–53).

The right to free speech includes "the right to utter or to print, . . . the right to distribute, the right to receive, the right to read," and the freedom of inquiry and thought. Griswold v. Connecticut, 381 U.S. 479, 482 (1965). Although civilly committed individuals are entitled to this First Amendment protection, "[a]ny form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech." Beaulieu v. Ludeman, 690 F.3d 1017, 1039 (8th Cir. 2012). While Plaintiff is not a prisoner, "his confinement

---

[16] Even if Plaintiff had standing to assert his purported access to the claim claim, he has failed to plausibly state an access to the courts claim upon which relief can be granted. As explained below, Plaintiff does not allege that a single intended recipient of the Memorandum was prevented from receiving it due to Defendants' confiscation of one copy of the Memorandum. (See, Am. Verified Compl. [Docket No. 31-2]). Nor does Plaintiff allege any facts from which it can be inferred that additional memorandums were necessary to bring the proposed lawsuit. (See, Id.). Moreover, Plaintiff does not identify a single other MSOP patient that was to be included in the proposed lawsuit. Plaintiff merely asserts in a conclusory manner that the proposed claims could not be brought due to the actions of Defendants. As such, Plaintiff's allegations are merely legal conclusions couched as factual allegations, which the Court is not bound to accept them as true. See, e.g., Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 664. Therefore, Plaintiff has failed to plausibly allege that he, or anyone else, was actually prevented from accessing the courts.

is subject to the same safety and security concerns as that of a prisoner." <u>Revels v. Vincenz</u>, 382 F.3d 870, 874 (8th Cir. 2004). As such, even though MSOP civil committees like Plaintiff are not prisoners, courts have evaluated MSOP civil committees' First Amendment claims under the guidelines established in <u>Turner v. Safley</u>, 482 U.S. 78 (1987). <u>See</u>, <u>Beaulieu</u>, 690 F.3d at 1039–41; <u>Banks v. Ludeman</u>, No. 8-cv-5792 (MJD/JJK), 2010 WL 4822892, at *9 (D. Minn. Oct. 4, 2010), report and recommendation adopted by 2010 WL 4822888 (D. Minn. Nov. 22, 2010); <u>Semler v. Ludeman</u>, 9-cv-732 (ADM/SRN), 2010 WL 145275, at *8 (D. Minn. Jan. 8, 2010).

In <u>Turner</u>, the United States Supreme Court held that a prison regulation impinging on inmates' constitutional rights is valid "if it is reasonably related to legitimate penological interest[.]" 482 U.S. at 89. <u>Turner</u> identified four factors that are to be considered when evaluating a detainee's First Amendment challenge to institutional regulations, policies, and practice:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absences of a ready alternative to the regulation.

<u>Ortiz v. Fort Dodge Corr. Facility</u>, 368 F.3d 1024, 1026 (8th Cir. 2004). The plaintiff bears the burden of proving that the <u>Turner</u> criteria should be resolved in his favor. <u>Abdullah v. Gunter</u>, 949 F.2d 1032, 1035 (8th Cir. 1991).

Plaintiff's factual allegations in support of his free speech claim are minimal. Plaintiff alleges that on January 27, 2020, he drafted the Memorandum and distributed it to other MSOP patients in an "attempt[] to coordinate information to file a lawsuit on behalf of himself and other co-plaintiffs." (<u>See, e.g.</u>, Am. Verified Compl. [Docket No. 31-2] ¶¶ 42, 45, 48). One MSOP patient, who Plaintiff refers to as "Doe," tore up the Memorandum and placed it in the janitor's room several days after he had received it. (<u>Id.</u> ¶ 51). Defendants Kosloski, Giersdorf-Thompson,

and Wyatt then recovered the Memorandum, read the Memorandum, met with Plaintiff about the Memorandum, and sent the Memorandum to the MSOP's Office of Special Investigations. (Id. ¶¶ 52–75). Plaintiff also alleges that Defendant Kosloski gave him a Disciplinary Report "for the Memorandum" and simultaneously informed Plaintiff that he "was prohibited from printing off any further memorandums of such a same or similar nature as the memorandum at issue." (Id. ¶¶ 76–78). However, the following day Plaintiff was informed that the Disciplinary Report would be dismissed, and shortly thereafter, the Disciplinary Report was in fact dismissed. (Id. ¶¶ 81–82).

Based on those minimal factual allegations, Plaintiff conclusorily asserts that Defendants censored his free speech by confiscating the Memorandum. (See, e.g., Id. ¶¶ 2(e), 152). However, Plaintiff does not support his conclusory assertion with any factual allegations that plausibly indicate censorship. Plaintiff alleges that the intended recipient of the Memorandum, "Doe," did indeed receive the Memorandum as Plaintiff intended, and he tore it up and discarded it several days later. Plaintiff also alleges that he distributed identical Memorandums to other MSOP patients. Plaintiff's Amended Verified Complaint is devoid of any allegations that a single intended recipient of the Memorandum was prevented from receiving it due to Defendants' confiscation of one copy of the Memorandum, which had already been discarded.

Plaintiff further conclusorily asserts that Defendants censored his right to free speech because Defendant Kosloski informed Plaintiff that he was prohibited him from distributing same or similar memorandums. Plaintiff generally alleges that "he was not able to print out further Memorandums nor provide assistance to the other respective patients." (Id. ¶ 109). However, Plaintiff does not allege that he actually intended to distribute the Memorandum to any additional recipients. Nor does Plaintiff provide any factual allegations that indicate he actually intended or

sought to distribute further similar memorandums. Also, as described above, Plaintiff has no constitutional right to act as a jailhouse lawyer/writ writer.

In short, Plaintiff's allegations that his right of freedom of speech has been censored are at best minimal, conclusory, and ultimately insufficient to sustain a Section 1983 claim. Moreover, federal courts have not traditionally intervened in the internal affairs of confinement facilities and instead "adopted a broad hands-off attitude toward problems of prison administration." Id. at 228 (quoting Procunier v. Martinez, 416 U.S. 396, 404 (1974)). "[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system." Shaw, 532 U.S. at 229 (citation omitted). Plaintiff's bare assertions that any restrictions on Plaintiff assisting other MSOP clients with their legal matters are unconstitutional and that Defendants censored his free speech are mere legal conclusions couched as factual allegations. As such, the Court is not bound to accept them as true. See, Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 664; Barton, 820 F.3d at 963–64; Hager v. Ark. Dept. of Health, 735 F.3d 1009, 1014–15 (8th Cir. 2013); Walker, 650 F.3d at 1209. Without alleging how Defendants' actions were not reasonably related to a legitimate interest, Plaintiff fails to articulate any viable First Amendment violation. Plaintiff's self-entitled First Amendment claims are simply not actionable as alleged.

Therefore, this Court recommends that Plaintiff's First Amendment censorship of free speech claim be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### 6.   Invasion of Privacy

Plaintiff asserts that Defendants invaded his privacy rights in violation of the First Amendment and Fourteenth Amendment by reading the Memorandum. (See, e.g., Am. Verified Compl. [Docket No. 31-2] ¶¶ 2(f), 154–57).

Plaintiff supports this purported claim with only the barest, conclusory allegations. As such, it is difficult to construe his the minimal factual allegations as showing any cognizable constitutional violation. Plaintiff merely alleges that Defendants Kosloski, Giersdorf-Thompson, and Wyatt read the Memorandum, the Memorandum was only meant to be read by its intended recipients, and the Memorandum "was private and in relation to pre-trial strategies." (Id. ¶¶ 43, 57, 156). Therefore, Plaintiff concludes that Defendants violated his First Amendment privacy rights. (Id. ¶ 156). When read in the context of Plaintiff's Amended Verified Complaint as a whole, it appears that Plaintiff contends that the Memorandum was privileged legal correspondence because Plaintiff was acting as a purported jailhouse lawyer/writ writer.

"The Constitution does not expressly provide for a right to privacy. However, the Supreme Court has recognized that a right to privacy may exist in relation to other specifically enumerated rights." Semler v. Ludeman, No. 09-0732 ADM/SRN, 2010 WL 145275, at *13 (D. Minn. Jan. 8, 2010) (collecting cases). Accordingly, courts have recognized that "[p]rivileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." Beaulieu v. Ludeman, 690 F.3d 1017, 1037 (8th Cir. 2012) (alteration in original) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)). However, Plaintiff does not plausibly allege that the Memorandum was mail, nor does he plausibly alleged that it was opened by Defendants. Rather, Plaintiff alleges that the Memorandum was found by Defendants torn up and discarded. More importantly, Plaintiff does not plausibly

allege that the Memorandum was privileged legal correspondence. Plaintiff is a non-lawyer, and as already noted, he has no constitutional right to act as a jailhouse lawyer/writ writer.

In opposition to the present motion, Plaintiff for the first time contends that he has plausibly alleged a Fourth Amendment search and seizure claim. (See, Mem. in Opp'n [Docket No. 62], at 31–32). Notwithstanding the impropriety of Plaintiff attempting to assert new claims in his motion papers, this Court finds that Plaintiff has not plausibly alleged any Fourth Amendment violation.

"An individual asserting Fourth Amendment rights 'must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.'" United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004) (citing Minnesota v. Carter, 525 U.S. 83, 88 (1998)); Rakas v. Illinois, 439 U.S. 128, 133–34 (1978). The defendant bears the burden of proving a reasonable expectation of privacy in the area searched. Rakas, 439 U.S. at 130–31.

The Eighth Circuit Court of Appeals has held that involuntarily civilly committed persons, such as Defendant, "retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." Beaulieu v. Ludeman, 690 F.3d 1017, 1028 (8th Cir. 2012); Serna v. Goodno, 567 F.3d 944, 948–49 (8th Cir. 2009). "Although the expectation of privacy shared by involuntarily civilly committed persons and pretrial detainees is of a 'diminished scope,' neither [the Eighth Circuit Court of Appeals] nor the Supreme Court has ever outlined exactly what expectation of privacy these persons reasonably have," except the Eighth Circuit Court of Appeals has held "that detainees do not have a reasonable expectation of privacy in their jail cells" but do have a "reasonable expectation of privacy in a single-person bathroom when there is no immediate indication that it is being used for purposes other than those ordinarily associated with bathroom facilities." Arnzen v. Palmer, 713 F.3d 369, 373 (8th Cir. 2013) (citing

Bell v. Wolfish, 441 U.S. 520, 559 (1979); Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 658 (1995); United States v. Hogan, 539 F.3d 916, 923 (8th Cir. 2008)).

Here, the Court finds that Plaintiff did not have a reasonable expectation of privacy in the janitor's closet, which he was not even occupying at the time it was searched. Nor did he have a reasonable expectation of privacy in the Memorandum, which Plaintiff had given to Doe whom had torn it up and discarded it in the janitor's room.

Accordingly, Plaintiff has failed to state a cognizable invasion or privacy claim whether it is purportedly brought under the First, Fourth, or Fourteenth Amendment.

Therefore, this Court recommends that Plaintiff's federal invasion of privacy claim be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### 7.   Substantive Due Process

Plaintiff asserts that Defendants have denied his substantive due process rights in violation of the Fourteenth Amendment by punishing him unconstitutionally. (Am. Verified Compl. [Docket No. 31-2] ¶¶ 2(k), 161–63). Plaintiff provides no specific factual allegations in support of this claim, but purports to assert it "[b]ased on the totality of the specific acts and omissions" alleged in Plaintiff's Amended Verified Complaint. (See, Id.).

"The substantive due process right found in the Fourteenth Amendment protects [Plaintiff] from government conduct (which deprives a person of life, liberty, or property) that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Favors v. Hoover, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, at *15 (D. Minn. Sept. 30, 2014) (citation omitted). "To establish a substantive due process violation, the [claimant] must demonstrate that a fundamental right was violated and that [the defendants'] conduct shocks the conscience." Folkerts

v. City of Waverly, Ia., 707 F.3d 975, 980 (8th Cir. 2013). "Only in the rare situation when the

state action is 'truly egregious and extraordinary' will a substantive due process claim arise."

Strutton v. Meade, 668 F.3d 549, 557 (8th Cir. 2012). The Eighth Circuit has further explained:

> [S]ubstantive due process is concerned with violations of personal rights . . . so
> severe . . . so disproportionate to the need presented, and . . . so inspired by malice
> of sadism rather than a merely careless or unwise excess of zeal that it amounted to
> brutal and inhumane abuse of official power literally shocking to the conscience.

Christiansen v. West Branch Cmty. Sch. Dist., 674 F.3d 927, 938 (8th Cir. 2012).

Here, even in liberally construing Plaintiff's pro se Amended Verified Complaint and

drawing all inferences in his favor, Plaintiff has not plausibly alleged that he was unconstitutionally

punished, nor has he plausibly alleged that any of his fundamental rights have been violated by

Defendants. Moreover, even if there were a fundamental right implicated by Defendants' actions,

Plaintiff has not alleged any conduct that shocks the conscience.

Therefore, this Court recommends that Plaintiff's Fourteenth Amendment substantive due

process claim be **DISMISSED without prejudice** for failure to state a claim upon which relief

can be granted pursuant to Rule 12(b)(6).

### iii.    42 U.S.C. § 1985 and § 1986 Claims

Plaintiff asserts that he was the subject of a conspiracy by Defendants to prevent him from

exercising his constitutional, statutory, and common law rights. (Am. Verfied Compl. [Docket No.

31-2] ¶¶ 2(i)–(j), 115–18, 158–60).

Section 1985 pertains to conspiracies to interfere with civil rights. 42 U.S.C. § 1985. To

establish a conspiracy under 42 U.S.C. § 1985, Plaintiff must plead facts demonstrating: "(1) the

existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him of his civil

rights; (3) an act in furtherance of the conspiracy; and (4) injury." McDonald v. City of Saint Paul,

679 F.3d 698, 706 (8th Cir. 2012.) "The 'purpose' element of the conspiracy requires that the

plaintiff prove a class-based 'invidiously discriminatory animus.'" City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 & n.10 (1971)). To state a conspiracy claim under § 1985, Plaintiff must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Johnson v. Perdue, 862 F.3d 712, 717–18 (8th Cir. 2017) (quotation omitted); see also, Barstad v. Murray Cnty., 420 F.3d 880, 887 (8th Cir. 2005) ("A conspiracy claim requires evidence of specific facts that show a 'meeting of minds' among conspirators.").

Section 1986 pertains to actions against those who have knowledge of § 1985 conspiracies but neglect to prevent them. 42 U.S.C. § 1986. Thus, to state a claim under § 1986, a plaintiff must first plead a valid § 1985 claim. Lewellen v. Raff, 843 F.2d 1103, 1116 (8th Cir. 1988).

Here, Plaintiff purports to assert claims under 42 U.S.C. § 1985 and § 1986. (See, Am. Verified Compl. [Docket No. 32-1]). However, even in reading Plaintiff's Amended Verified Complaint in the light most favorable to him, Plaintiff has not raised any factual allegations that plausibly support the existence of a conspiracy between Defendants as required to state a claim under § 1985. Rather, Plaintiff merely alleges in a conclusory manner that "[e]ach Defendant, besides, Defendant Harpstead, listed herein have been and continue to have meetings with each other, most likely by some means of electronic communication, to meet about (or have a meeting of the minds about) the specific acts and omissions of this Action." (Id. ¶ 117). These conclusory allegations are insufficient to plausibly plead the existence of a conspiracy as required to state a claim under § 1985. See, Johnson, 862 F.3d at 718 (finding conclusory allegations of a conspiracy insufficient to state a claim); Ernst v. Hinchliff, 129 F. Supp. 3d 695, 728 (D. Minn. 2015), aff'd, 652 Fed. App'x 479 (8th Cir. 2016) (same).

Moreover, Plaintiff alleges that the individual Defendants, except Defendant Harpstead, are all employed by MSOP. (See, Am. Verified Compl. [Docket No. 31-2] ¶¶ 14–23). "[A] government entity or corporation cannot conspire with itself." Habhab v. Hon, 536 F.3d 963, 969 (8th Cir. 2008) (citing Barstad, 420 F.3d at 887). "An exception arises when the agents were, at the time of the conspiracy, acting beyond the scope of their authority or for their own benefit." Barstad, 420 F.3d at 887. However, Plaintiff has not alleged or raised any facts from which it can be inferred that Defendants acted "beyond the scope of their authority or for their own benefit." See, Id. Accordingly, Plaintiff has further failed to plausibly allege the existence of a conspiracy as required to state a claim under § 1985. See, e.g., Barstad, 420 F.3d at 887; Munt v. Schnell, No. 19-cv-3390 (DWF/ECW); 2020 WL 1695420, at *19 (D. Minn. Jan. 21, 2020), report and recommendation adopted by 2020 WL 968353 (D. Minn. Feb. 28, 2020), aff'd, 2020 WL 5588650 (8th Cir. Aug. 7, 2020) (finding no ability to conspire where the defendants were all employees of the Minnesota Department of Corrections).

As noted above, no § 1986 cause of action can proceed without an underlying § 1985 violation. See, e.g., Lewellen, 843 F.2d at 1116; Coleman v. Garber, 800 F.2d 188, 191 (8th Cir. 1986). Because Plaintiff has failed to state a claim based on § 1985 he has also failed to state a claim based on § 1986.

Therefore, this Court recommends that Plaintiff's 42 U.S.C. § 1985 and § 1986 claims be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### C.  Plaintiff's State Law Claims

Plaintiff asserts various state law claims under the Minnesota Constitution, the Minnesota Government Data Practices Act, and the Minnesota Health Records Act,[17] as well as, various common law claims such as negligence and fraud. (See, Am. Verified Compl. [Docket No. 31-2]).

Although Plaintiff invokes § 1983, "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." Alexander v. Hedback, 718 F.3d 762, 765 (8th Cir. 2013) (citing Lind v. Midland Funding, LLC, 688 F.3d 402, 405 (8th Cir. 2012)). Section 1983 does not itself grant jurisdiction; it is a vehicle for claims of federal statutory and federal constitutional violations, not a cause of action in and of itself. See, Hagans v. Lavine, 415 U.S. 528, 534 (1974). "[A]s noted by the Eighth Circuit, 'a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983.'" Rollins v. City of Albert Lea, 79 F. Supp. 3d 946, 960 (D. Minn. 2014) (quoting Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993)). Therefore, to the extent that Plaintiff attempts to bring claims asserting violations of the Minnesota Constitution, Minnesota statutes, or Minnesota common law pursuant to § 1983, those claims necessarily fail.

Moreover, since this Court recommends the dismissal of all of Plaintiff's federal statutory and federal constitutional claims alleged under 42 U.S.C. § 1983, § 1985, and § 1986, and there are no remaining federal claims against any Defendant in this action, it will further recommend that the District Court decline to exercise supplemental jurisdiction over these remaining state law claims. See, Barstad v. Murray Cty., 420 F.3d 880, 888 (2005) (stating that when all federal law

---

[17] The Court notes that in his memorandum in opposition to the present motion, Plaintiff concedes that his claims under the Minnesota Health Records Act do not exist, and he requests that such claims be struck without prejudice. However, Plaintiff also purports to reserve the right to appeal issues based on such claims. (Mem. in Opp'n [Docket No. 62], at 43).

claims are eliminated prior to trial, the balance of the factors relevant to an exercise of pendent jurisdiction generally point toward declining to exercise jurisdiction over any remaining state law claims).

Therefore, this Court recommends that Plaintiff's state law claims claims be **DISMISSED without prejudice** for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## IV.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I OF AMENDED COMPLAINT AND NOTICE [Docket No. 55]

On September 16, 2020, Plaintiff filed his motion for partial summary judgment. [Docket No. 55]. Plaintiff seeks an Order of this Court granting summary judgement in Plaintiff's favor as to Count I of his Amended Verified Complaint, which asserts a procedural due process claim challenging the MSOP's policy prohibiting the calling of witnesses at disciplinary hearings. (Id.). However, this Court has already recommended granting Defendants' motion to dismiss and thereby dismissing Plaintiff's procedural due process claim.

Accordingly, the Court recommends that Plaintiff's Motion for Partial Summary Judgment as to Count I of Amended Complaint and Notice, [Docket No. 55], be **DENIED as moot**. See, e.g., Libertarian Party of Minn. v. Simon, 463 F. Supp. 3d 936 (D. Minn. 2020) ("Because the court grants the [defendant's] motion to dismiss the amended complaint for failure to state a claim, the court must deny plaintiffs' motion for summary judgment as moot.").

## V.   CONCLUSION

Therefore, based on the foregoing and on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED THAT**:

1.   Plaintiff's Motion for Leave to File First Supplemental Verified Complaint and Notice, [Docket No. 41], is **DENIED**.

Furthermore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECCOMENDED THAT**:

1.  Defendants' Motion to Dismiss Plaintiff's Amended Complaint, [Docket No. 47], be **GRANTED**;

2.  Plaintiff's Motion for Partial Summary Judgment as to Count I of Amended Complaint and Notice, [Docket No. 55], be **DENIED as moot**; and

3.  Plaintiff's Amended Verified Complaint, [Docket No. 31-2], be **DISMISSED** in its entirety as set forth above.

Dated: November 13, 2020                                  s/Leo I. Brisbois
                                                          The Honorable Leo I. Brisbois
                                                          U.S. MAGISTRATE JUDGE

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).